# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 27, 2016 Session

## STATE OF TENNESSEE v. THOMAS WHITED

**Appeal by Permission from the Court of Criminal Appeals**
**Appeal from the Criminal Court for Knox County**
**No. 100430       Steven Wayne Sword, Judge**

_____

**No. E2013-02523-SC-R11-CD – Filed November 7, 2016**
_____

A jury convicted the defendant on nine counts of especially aggravated sexual exploitation of a minor, one count of attempt to commit that offense, thirteen counts of observation without consent, and one count of attempt to commit that offense. The convictions arose out of the defendant's hidden-camera videotaping of his twelve-year-old daughter and her teenage friend while they were in various stages of undress. The trial court sentenced the defendant to an effective sentence of twenty-two years. In a divided opinion, the Court of Criminal Appeals affirmed his convictions and sentence. In determining that the hidden-camera videos constituted prohibited child pornography under the child sexual exploitation statutes, the Court of Criminal Appeals relied in part on the six specific factors set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), sometimes referred to as the "*Dost* factors." The defendant now appeals his nine convictions for especially aggravated sexual exploitation of a minor, and he also challenges his sentence. We hold that, under the three child sexual exploitation statutes, Tennessee Code Annotated sections 39-17-1003, -1004, and -1005 (2014), the content of the prohibited material is judged by the same standard, regardless of whether the accused produced it, distributed it, or merely possessed it. In assessing whether material is prohibited under these statutes, we reject the use of the *Dost* factors as a "test" or an analytical framework. The material at issue must be evaluated based on what is depicted, without reference to the defendant's subjective intent, because the Tennessee statutes on the production of child pornography do not include the accused's subjective intent or purpose of experiencing sexual arousal or gratification as an element of the offense. Assessing the surreptitious videos taken by the defendant in the instant case, we conclude that the videos do not depict a minor engaged in "sexual activity," defined by statute as the lascivious exhibition of a minor's private body areas. For this reason, the videos are insufficient to support the defendant's convictions for especially aggravated child sexual exploitation. Accordingly, we reverse and dismiss the defendant's convictions for especially aggravated sexual exploitation of a minor. In light of this holding, we remand

to the trial court for resentencing based on the convictions that were not challenged on appeal. On remand, the State may, if it so chooses, retry the defendant on the lesser-included offense of attempt.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Criminal Court and the Court of Criminal Appeals Reversed; Case Remanded to the Criminal Court**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and SHARON G. LEE, JJ., joined.

Mark E. Stephens, District Public Defender, and Jonathan P. Harwell, Assistant Public Defender (on appeal); and Robert C. Edwards, Assistant District Public Defender (at trial), for the appellant, Thomas Whited.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Andrew C. Coulam, Assistant Attorney General; Randall E. Nichols, District Attorney General; Joanie Stallard Stewart and Philip Morton, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On a number of occasions in June, July, and August 2012, Thomas Whited ("defendant") hid his cell phone in the bedroom and bathroom used by his twelve-year-old daughter ("Daughter") so as to secretly video Daughter and her fourteen-year-old friend ("Friend") in various stages of undress. In the bathroom, the defendant positioned his cell phone to video Daughter while she was partly to fully nude as she prepared for her shower and performed after-shower bathroom activities. In Daughter's bedroom, the defendant hid his cell phone just before Daughter and Friend entered the bedroom in their bikini swimsuits so as to secretly video them as they changed into dry clothes.

On August 15, 2012, the defendant's wife ("Wife") saw a cell phone on their bedroom dresser and mistakenly thought it was hers. She picked up the phone, opened the photo gallery, and discovered the videos the defendant had made of Daughter and Friend. That evening she confronted the defendant, and the next day she reported his conduct to the police. The defendant was soon arrested.

In October 2012, a Knox County Grand Jury charged the defendant on thirty-eight counts: (a) nine counts of especially aggravated sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1005, a Class B felony;[1] (b) one count of attempted especially aggravated sexual exploitation of a minor in violation of the same section; (c) thirteen counts of unlawful photography without consent in violation of Tennessee Code Annotated section 39-13-605,[2] a Class A misdemeanor;[3] (d) one count of attempted unlawful photography in violation of the same section; and (e) fourteen counts of observation without consent in violation of Tennessee Code Annotated section 39-13-607,[4] a Class A misdemeanor.[5]

In April 2013, the State voluntarily dismissed the fourteen charges of unlawful photography. The unlawful photography statute includes an exception for photography of a minor when a parent has consented; the parties indicated at oral argument that the unlawful photography charges in this case were dropped because the defendant is

---

[1] Section 39-17-1005 makes it unlawful "to knowingly . . . use . . . a minor . . . in the production of . . . material that includes the minor engaging in . . . [s]exual activity." Tenn. Code Ann. § 39-17-1005(a)(1) (2014). The definition of "sexual activity" involved in this case is the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(G) (2014).

[2] Section 39-13-605 makes it unlawful to knowingly photograph a person without their consent when that person has a reasonable expectation of privacy, "or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph . . . (1) [w]ould offend or embarrass an ordinary person if such person appeared in the photograph; and (2) [w]as taken for the purpose of sexual arousal or gratification of the defendant." Tenn. Code Ann. § 39-13-605(a) (2014).

[3] Effective July 1, 2014, the crime of unlawful photography is a Class E felony if the victim is under thirteen years old. Tenn. Code Ann. § 39-13-605(d)(2)(B) (Supp. 2016). The amendment is not applicable in this case.

[4] Section 39-13-607 makes it unlawful "for a person to knowingly spy upon, observe or otherwise view an individual, when the individual is in a place where there is a reasonable expectation of privacy, without the prior effective consent of the individual, if the viewing . . . (1) [w]ould offend or embarrass an ordinary person if the person knew the person was being viewed; and (2) [w]as for the purpose of sexual arousal or gratification of the defendant." Tenn. Code Ann. § 39-13-607(a) (2014).

[5] Effective July 1, 2014, the crime of observation without consent is a Class E felony if the victim is under thirteen years old. Tenn. Code Ann. § 39-13-607(d)(2) (Supp. 2016). The amendment is not applicable in this case.

Daughter's parent.[6] *See* Tenn. Code Ann. § 39-13-605(a). This left for trial a total of twenty-four counts—nine counts of especially aggravated sexual exploitation, one count of attempted especially aggravated sexual exploitation, and fourteen counts of observation without consent.

The two-day jury trial began on July 29, 2013. The jurors heard testimony from Daughter, Friend, and Wife.

At the time of trial, Daughter was thirteen years old and lived with her mother and her twin brother. She attended a neighborhood middle school and was involved in orchestra, soccer, track, and cross country.

Daughter understood that she was testifying in court because her father had videotaped her without her knowledge. Before the videotaping, Daughter said, she and the defendant had a good relationship. After the videos were discovered, Daughter had only occasional contact with the defendant, and he sent her one text message telling her that he was sorry for secretly videotaping her. By the time of trial, she had no relationship with him at all; Daughter commented that the defendant had "wasted" their relationship by taking the surreptitious videos.

In her testimony, Daughter confirmed that she did not give the defendant permission to videotape her. She had not seen the videos, but she understood that they were taken while she was naked. Daughter testified that she never wanted to see the videos and that she did not want other people to see them. Daughter had not discussed the videos with the defendant.

At the time Friend testified, she was fifteen years old and attended a neighborhood high school. She said that she and Daughter had been friends their entire lives and had always lived close to each other. Friend described them as "inseparable"; she and Daughter often spent the night at each other's homes and swam, cooked, and played soccer together. Prior to the videotaping incident, the defendant was sometimes present when Friend was at Daughter's home. Friend said that she occasionally went with Daughter and the defendant to the local flea market where the defendant sometimes

---

[6] Neither party addressed the reason for dropping the unlawful photography charges as to the videos that included Daughter's Friend.

- 4 -

worked. She said that Wife was like another mother to her and, before the videos were discovered, the defendant had been like another father to her.

Friend knew that she was testifying at trial because the defendant had videotaped her without her permission. She understood that the defendant had hidden a cell phone in Daughter's bedroom on occasions when she and Daughter were in there changing clothes. She confirmed that she never gave the defendant permission to videotape her. Asked how learning of the videos had made her feel, Friend responded, "Like crap." Friend felt "betrayed" by the defendant. She emphasized, "I never want to see him again."

Wife testified as well. As background, Wife testified that she and the defendant married in 1997. During the course of their marriage, the defendant had worked as a security officer for a hospital, had worked for KB Toys and other retail stores, and had sometimes worked as a certified nursing assistant. He also owned a business that sold vintage toys. The defendant was a member of the Army National Guard, trained as a combat medic; he was deployed to Iraq in 2010. Wife had worked for an orthopedic surgery center for some time, and she was still working there at the time of trial.

For the most part, Wife said, they had a good marriage. After an episode in which Wife was unfaithful in 2009, they discussed divorce, but she felt that the marriage had recovered and that everything was fine until she found the hidden-camera videos.

Wife testified about the night she found the videos on the defendant's cell phone. She said that, around 10:30 p.m. on the evening of August 15, 2012, she noticed a cell phone on the bedroom dresser. It was an old phone, one that looked like her own cell phone. Believing it to be hers, Wife picked it up to charge it for the night. When the phone did not show her screensaver, she opened the photo gallery and noticed some pictures that she could not see very well. Eventually she realized that they were not photos but videos, and they showed the defendant setting up his cell phone to take videos of Daughter.

Once Wife realized what had been going on, she looked at the first video and the last video to try to determine how long the defendant had been videotaping Daughter. The children were home that evening, so Wife waited for the defendant to come back into their bedroom to talk to him about the videos she had discovered. When she asked the defendant about them, he gave her no explanation.

Wife told the defendant to leave the home. The defendant responded, "I'm sorry." He told Wife that both of his parents had molested him as a child; Wife had never heard that before. Wife kept the cell phone with the videos, and the defendant left. He first went out to his car and sat there for a bit. Finally, Wife called the defendant's cell phone (a different one) and asked him to leave so that she could go to bed.

The next day, Wife testified, the defendant came back to their house to take Daughter to school; her older child rode to school with them. That afternoon, Wife called the police from her work and reported the videos. In response, police officers came to Wife's workplace, where she gave them the cell phone that contained the videos. Later, the police came to their house and retrieved the home computer, a laptop computer, a video recorder, and some other cell phones.

Wife testified that she could tell from watching the videos that they had been filmed in Daughter's bedroom and in their guest bathroom, which Daughter used. For the trial, Wife made a video of herself going through the house, and she used the video to demonstrate the location of everything depicted in the hidden-camera videos taken by the defendant. Wife's video showed the master bedroom and the basket where all their old phones were kept, which is where she found the phone containing the defendant's videos. She showed where she believed the defendant hid his cell phone video camera in the bedroom and bathroom. Wife said that, when she discovered the defendant's hidden-camera videos, she recalled that she had recently noticed that the towels in the bathroom basket were disheveled and that something in the basket had been moved. She noted that the shower/bathtub in the bathroom used by Daughter is directly in front of the vanity and that the shower curtain is opaque.

Wife described Daughter as an outgoing child, sweet, intelligent, and well-behaved. She said that Friend came to their house often and spent the night; she and Daughter listened to music, took selfie pictures, and generally acted silly together.

On cross-examination, Wife testified that, when the defendant returned from his deployment in Iraq, he sporadically took testosterone treatments. At the time, the defendant was having trouble performing in the marriage, so Wife encouraged the treatments. Wife had been unhappy with the defendant's income and wanted him to find a more regular job.

The jury also heard testimony from James Smithhart, a cyber forensics investigator with the Knox County Sheriff's Office. Mr. Smithhart testified as a fact witness and also as an expert in digital forensics in the sexual exploitation of minors. He,

- 6 -

along with another detective, met with Wife at her workplace the day after she discovered the videos on the defendant's cell phone. Wife gave consent for Mr. Smithhart to take the cell phone and extract the videos that the defendant had taken of the two victims.

When Mr. Smithhart processed the defendant's cell phone, he discovered eleven videos that matched Wife's allegations. He said that the videos were created on various dates starting on June 21, 2012, and ending on August 10, 2012. Mr. Smithhart said that the videos had been deliberately moved out of the cell phone's default video folder and into an images folder; the user must take an extra step to do this. Mr. Smithhart put all of the videos on separate DVDs for trial; they were marked as Exhibits 16 through 26. For expediency, he "fast-forwarded" portions of the videos that showed no activity. Mr. Smithhart was able to determine the last date on which each video was accessed, but most of them had last been accessed on August 15 and 16, after Wife discovered them. Two of the videos not accessed by Wife had last been accessed on July 24, 2012. On cross-examination, Mr. Smithhart testified that law enforcement seized all of the defendant's other digital devices, including a laptop computer, a desktop computer, and other cell phones, and he found no inappropriate videos or images on those devices.

All eleven videos were played for the jury. Nine of them were proffered to support the nine charges of especially aggravated sexual exploitation.

After the State rested, the trial court denied the defendant's motion for a judgment of acquittal. The defendant elected not to testify. He presented no evidence at trial.

In the jury instructions, the trial court read the jury the statutory language for the offenses charged. The court then explained to the jury that, to find the defendant guilty of especially aggravated sexual exploitation, the State had the burden to prove that (1) the defendant used a minor to participate in the production of material which includes a minor engaging in sexual activity and (2) that the defendant acted knowingly. *See* Tenn. Code Ann. § 39-17-1005. The trial judge read all of the statutory definitions of "sexual activity," including the applicable definition, which is the "lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(G) (2014). Regarding the meaning of "lascivious exhibition," the trial court instructed the jury: "'Lascivious' means tending to excite lust; lewd; indecent." *See* T.P.I.–Crim. 34.03.

The defendant requested two additional jury instructions to further explain the meaning of "lascivious exhibition." He first requested that the jury be instructed on the so-called *Dost* factors set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal.

1986), *aff'd sub nom. United States v. Weigand*, 812 F.2d 1239 (9th Cir. 1987). The requested instruction listed the six factors to consider in determining whether the videos made by the defendant were lascivious, and also indicated that the sixth factor was applied as to the "average viewer" rather than the subjective response of the defendant.[7] The second jury instruction requested by the defendant stated: "Photography of an undressed minor by itself is not sufficient to sustain a conviction for this offense."

The trial court declined to give either of the requested jury instructions. As to the first one, the trial court reasoned that Tennessee's legislature has not adopted the *Dost* factors in the child sexual exploitation statutes or otherwise, so instructing the jury on the *Dost* factors could be viewed as imposing additional non-statutory elements to the offense. The trial court rejected the second jury instruction based on its conclusion that the pattern jury instruction defined "lascivious" in a manner that was sufficient to inform the jury about the proof required to convict for the offense.

---

[7] The requested instruction read:
To find that the content depicted in the video was "lascivious," some appropriate factors to consider are:

(1) Whether the focal point of the visual depiction is on the child's genitals or pubic area;

(2) Whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

(3) Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) Whether the child is fully or partially clothed, or nude;

(5) Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6) Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The requested instruction added: "Factor (6) should be applied when the visual depiction is intended or designed to elicit a sexual response in the average viewer, rather than looking to the subjective response of the defendant."

The jury returned a verdict of guilty on all twenty-four counts—nine counts of especially aggravated sexual exploitation of a minor (section 39-17-1005), one count of attempt to commit that crime, thirteen counts of observation without consent (section 39-13-607), and one count of attempt to commit that crime.[8] The trial judge approved the verdict.

At the sentencing hearing, the two victims and Wife read impact statements. Defense counsel noted for the record that the trial court did not permit cross-examination of these witnesses. After that, the trial court sentenced the defendant to twelve years of incarceration for the conviction on Count 1 (especially aggravated sexual exploitation) and ten years on Count 10 (especially aggravated sexual exploitation), to run consecutively, for a total of twenty-two years. The trial court sentenced the defendant to ten years for each of the seven remaining sexual exploitation convictions and six years on one count of attempt to commit that crime, all to run concurrent to the sentence in Count 1. In addition, the trial court sentenced the defendant to eleven months and twenty-nine days for each of the observation without consent convictions and six months on the single count of attempt to commit that crime, all to run concurrently to the sentence for Count 1. Thus, the trial court sentenced the defendant to a total effective sentence of twenty-two years as a Range I, Standard Offender, to be served at 100%.

The defendant filed a timely motion for a new trial and an amended motion for a new trial. After a hearing, the trial court denied the defendant's motion. The defendant appealed his nine convictions for especially aggravated sexual exploitation, and he also appealed his sentence.

A majority of the Court of Criminal Appeals affirmed the trial court in all respects. *State v. Whited*, No. E2013-02523-CCA-R3-CD, 2015 WL 2097843, at \*13 (Tenn. Crim. App. May 4, 2015). To evaluate the sufficiency of the evidence, the court referred to the six *Dost* factors. Specifically, it applied the sixth *Dost* factor subjectively, asking whether the depiction in the videos was intended to elicit a sexual response in the defendant or a like-minded pedophile.[9] *Id.* at \*7. The majority answered this inquiry in

---

[8] Count 17 was originally charged as observation without consent, but it was submitted to the jury as a charge of attempt.

[9] The sixth *Dost* factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832.

the affirmative. It evaluated the other *Dost* factors as well and held that the evidence was sufficient for the jury to find that the videos depicted a minor engaged in the lascivious exhibition of her private body areas.[10] *Id.* at *8. Consequently, the majority affirmed the defendant's nine convictions for especially aggravated sexual exploitation of a minor. *Id.* at *13.

The appellate court found no error in the trial court's rejection of the defendant's two jury instruction requests. *Id.* at *9-10. It found that the *Dost* factors were relevant but warned that they "should be applied cautiously" because they are not definitional, not comprehensive, and not applicable in every situation.[11] *Id.* at *9 (citing *State v. Whitlock*, No. E2010-00602-CCA-R3-CD, 2011 WL 2184966, at *6 (Tenn. Crim. App. June 6, 2011)). The court upheld the trial court's refusal to instruct the jury that "[p]hotography of a[n] undressed minor by itself is not sufficient to sustain a conviction" because it agreed with the trial court that the definitions of "sexual activity" and "lascivious" given to the jurors were sufficient to instruct them on the law. *Id.* at *10.

As to sentencing, the appellate court held that the defendant waived his argument that he was deprived of the opportunity to cross-examine the witnesses who testified at sentencing and that, in any event, any error on this issue would have been harmless. *Id.* at *11. It also upheld the trial court's imposition of two consecutive sentences. *Id.* at *12. Thus, a majority of the Court of Criminal Appeals affirmed the judgment of the trial court in its entirety. *Id.* at *13.

Judge Camille McMullen filed a dissent in which she opined that the evidence was insufficient to support the convictions for especially aggravated sexual exploitation. Using a chart form, the dissent dissected the videos and concluded that "there is simply nothing lascivious or lewd about the conduct depicted in the videos." *Id.* at *15 (McMullen, J., dissenting). The dissent opposed a subjective application of the sixth *Dost* factor. Under the subjective standard utilized by the majority, the dissent posited,

---

[10] The Court of Criminal Appeals found that the first *Dost* factor, whether the focal point of the visual depiction was on the child's genitals or pubic area, was met based on the defendant's placement and position of the camera. *Whited*, 2015 WL 2097843, at *7-8.

[11] The appellate court stated: "Because the factors have proved so difficult to apply and function as a 'starting point' for determining whether an image is lascivious, the factors are not a mandatory facet of jury instructions for the crime of especially aggravated sexual exploitation of a minor." *Whited*, 2015 WL 2097843, at *9.

any "photograph taken by a pedophile" would be deemed sufficient to support a conviction for "the offense of especially aggravated sexual exploitation of a minor, regardless of the innocuous character of the photograph." *Id.* at *16. The dissent concluded that the evidence showed that the defendant was attempting to create a lascivious video, even though he failed to do so. Consequently, the dissent would have reduced the convictions for especially aggravated sexual exploitation of a minor to attempts to commit that crime.[12] *Id.* (citing *United States v. Vanderwal*, 533 Fed. Appx. 498 (6th Cir. 2013)).

We granted the defendant's application for permission to appeal.

## ISSUES AND STANDARD OF REVIEW

In this appeal, the defendant raises the same issues he raised in the Court of Criminal Appeals, challenging his nine convictions for especially aggravated sexual exploitation. The defendant argues: (1) the trial court erred in refusing to instruct the jury as he requested; (2) the evidence was insufficient to convict him of especially aggravated sexual exploitation when no sexual activity was depicted in the videos; (3) the *Dost* factors, applied objectively, weigh against a finding of "lasciviousness" in the videos; (4) the trial court erred in refusing to permit him to cross-examine the witnesses who testified at the sentencing hearing; and (5) the trial court erred in imposing consecutive sentences.[13]

In our view, the pivotal issues involve (1) the appropriate standard for determining whether a given depiction is a "[l]ascivious exhibition" of the minor's private body areas within the meaning of Tennessee Code Annotated section 39-17-1002(8)(G) and Tennessee's child sexual exploitation statutes and (2) the application of that standard to

---

[12] The dissent also would have held that the convictions on Count 7 (attempt) and Count 10 should be dismissed because the videos supporting those charges depicted no nudity. *Whited*, 2015 WL 2097843, at *16.

[13] The defendant also argues that the use of the term "lascivious exhibition" as one of the definitions of "sexual activity" is unconstitutionally vague. This argument is waived for failure to raise it prior to this appeal. *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 829-30 (Tenn. 2015).

the evidence in this case to determine whether the evidence was sufficient for the jury to find that the videos produced by the defendant were prohibited under the statutes.

Of course, the general standard for appellate review of the sufficiency of the evidence "is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Bell*, 480 S.W.3d 486, 516 (Tenn. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Beyond that, however, the standard for appellate review is informed by whether the court is reviewing a finding of fact or a conclusion of law.

This Court has not addressed whether the determination regarding a "lascivious exhibition" of a child's private body areas is a finding of fact or a conclusion of law. Looking to persuasive authority from other jurisdictions, we find that courts disagree about whether a lasciviousness determination is a factual finding or a legal conclusion.

Federal decisions on the question of lasciviousness are useful for comparison because federal law is similar to Tennessee law in the area of child sexual exploitation. The definition of "sexual activity" in Tennessee Code Annotated section 39-17-1002(8)(G) and the definition of "sexually explicit conduct" in 18 U.S.C. § 2256(2)(A)(v) both include the "lascivious exhibition" of the genitals or pubic area.[14] Therefore, we look particularly to federal caselaw for guidance in "lascivious exhibition" cases. *See Robinson v. Fulliton*, 140 S.W.3d 312, 318 (Tenn. Ct. App. 2003) (holding that "it is appropriate to consider the reasoning of federal courts that have interpreted a comparable federal statute").

Even federal decisions, however, lack uniformity on whether appellate review of a lasciviousness determination is the review of a factual finding, a legal conclusion, or a mixed question of fact and law. *United States v. Steen*, 634 F.3d 822, 825 (5th Cir. 2011). In *Steen*, the Fifth Circuit Court of Appeals described the split among federal courts on the standard of review for lascivious exhibition:

---

[14] Tennessee's definition of "lascivious exhibition" is somewhat broader than the federal definition because, unlike the federal statute, it includes exhibition of "the female breast" and a person's "buttocks, anus or . . . rectal area." Tenn. Code Ann. § 39-17-1002(8)(G).

The standard of review for lasciviousness determinations requires additional explanation, as our sister courts of appeal are split on the issue. The Third, Eighth, and Tenth Circuits have held that the decision of whether an image is lascivious requires *de novo* review because it involves a legal standard. The Ninth Circuit calls for clear error review, noting that a district court's findings of lasciviousness should be upheld unless the appellate court has a "definite and firm conviction that a mistake has been committed."

*Id*. (footnotes omitted). While acknowledging that some appellate courts consider their task as the review of a question of law, the *Steen* court followed other Fifth Circuit precedent in applying a "clear error" standard of review to assess the sufficiency of the evidence, at least insofar as the child sexual exploitation conviction "indicates a factual finding that the image was a lascivious exhibition of the genitals." *Id.* at 826 & n.11 (citing *United States v. Boudreau*, 250 F.3d 279, 282 (5th Cir. 2001); *United States v. Carroll*, 190 F.3d 290, 293 (5th Cir. 1999), *vacated in part, reinstated in relevant part by* 227 F.3d 486, 488 (5th Cir. 2000) (per curiam)); *accord United States v. Schuster*, 706 F.3d 800, 806 (7th Cir. 2013); *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009). *But see United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (reviewing the issue as a matter of law de novo "to ensure that the First Amendment has not been improperly infringed"); *United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994) ("Because the meaning of the statutory phrase 'lascivious exhibition' . . . poses a pure question of law, our review is plenary.").

Other federal courts have treated review of a finding of lascivious exhibition as appellate review of a mixed question of fact and law. *See United States v. Helton*, 302 Fed. Appx. 842, 846 (10th Cir. 2008). The Eighth Circuit Court of Appeals explained: "[T]he question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact," but "the meaning of 'lascivious exhibition of the genitals' is an issue of law." *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) (citing *United States v. O'Malley*, 854 F.2d 1085, 1087 (8th Cir. 1988); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999)); *see also Weigand*, 812 F.2d at 1244 (noting that "[t]he question of whether the pictures fall within the statutory definition is a question of fact as to which we must uphold the district court's findings unless clearly erroneous," but that "[t]he definition of 'lascivious' is a matter of law which we review *de novo*").

We agree with the Eighth Circuit that appellate review of a lasciviousness determination in child sexual exploitation cases is review of a mixed question of fact and law. The appellate court must review the finding by the trier of fact that the depiction is a lascivious exhibition, including underlying factual issues such as the extent to which the minor appears nude or whether the minor appears to be portrayed in a sexually suggestive manner. *See Rayl*, 270 F.3d at 714. In addition, looking at the evidence in a light most favorable to the verdict, the appellate court must determine whether the depiction is legally sufficient to constitute a "lascivious exhibition" within the meaning of the statute. The latter determination is a question of law subject to plenary review. *Id.*

In the instant case, the crux of the defendant's argument is that the depictions in the videos are legally insufficient to support a finding that the minors were engaged in a "lascivious exhibition" within the meaning of the Tennessee statute. Accordingly, we review it as primarily an issue of law, subject to *de novo* review. To the extent, however, that this issue involves disputed facts, we give the State the strongest legitimate view of the evidence. Our standard of review for other issues on appeal will be mentioned in the discussion of those issues.

## ANALYSIS

The issues presented in this appeal require interpretation of Tennessee statutes on the sexual exploitation of children, specifically the Tennessee Protection of Children Against Sexual Exploitation Act of 1990, Tennessee Code Annotated sections 39-17-1001 to -1008 ("the Act"). The Act criminalizes, among other things, the possession, distribution, and production of child pornography. Tenn. Code Ann. §§ 39-17-1003 to -1005; *see also State v. Sprunger*, 458 S.W.3d 482, 485 n.4 (Tenn. 2015). Basic possession is charged as "sexual exploitation," a Class D felony:

> (a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:
>
> (1) Sexual activity; or
>
> (2) Simulated sexual activity that is patently offensive.

Tenn. Code Ann. § 39-17-1003(a). Distribution (or possession with intent to distribute) is charged as "aggravated sexual exploitation," a Class C felony:

- 14 -

(a)(1) It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material, or possess with the intent to promote, sell, distribute, transport, purchase or exchange material, that includes a minor engaged in:

(A) Sexual activity; or

(B) Simulated sexual activity that is patently offensive.

*Id.* § 39-17-1004(a)(1). The offense at issue in this case is the production of child pornography, charged as "especially aggravated sexual exploitation." This is the most culpable of the three, a Class B felony:

(a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in:

(1) Sexual activity; or

(2) Simulated sexual activity that is patently offensive.

*Id.* § 39-17-1005(a).

As can be seen, the three statutes quoted above make it unlawful to possess, distribute, or produce the same type of material, namely, "material that includes a minor engaged in . . . [s]exual activity." This "material" is, in common parlance, child pornography.[15] *See, e.g.*, *Sprunger*, 458 S.W.3d at 486 (characterizing an offense under section 39-17-1004 as "selling and distributing child pornography"); *State v. Pickett*, 211 S.W.3d 696, 699 (Tenn. 2007) (characterizing an offense under section 39-17-1003 as "the possession of child pornography"). The term "sexual activity" is defined in the Act:

(8) "Sexual activity" means any of the following acts:

---

[15] The term "child pornography" is not used in the Act, but the three statutes are commonly referred to as child pornography statutes.

- 15 -

(A) Vaginal, anal or oral intercourse, whether done with another person or an animal;

(B) Masturbation, whether done alone or with another human or an animal;

(C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse;

(D) Sadomasochistic abuse, including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person;

(E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure by a licensed professional;

(F) Patently offensive, as determined by contemporary community standards, conduct, representations, depictions or descriptions of excretory functions; or

(G) Lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person.

Tenn. Code Ann. § 39-17-1002(8). It is undisputed that the videos in question do not depict any of the types of sexual activity listed in (A) through (F) of the above definition. In this case, the focus is on subsection (G), whether the subject videos depict minors engaged in the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area." *Id.* § 39-17-1002(8)(G).

As background, we will briefly discuss constitutional considerations regarding child pornography, cases discussing the meaning of "lascivious exhibition" in the context of child pornography, and whether the *Dost* factors should be used as a test to determine whether particular material is prohibited under Tennessee's sexual exploitation statutes. We will then consider whether the videos at issue in this case include the "lascivious

exhibition" of the minors' private body areas and thus are sufficient to support a conviction for especially aggravated sexual exploitation of a minor.

## A. Child Pornography—Unprotected Speech

First we look at constitutional constraints on the states' ability to regulate child pornography. In *Miller v. California*, the United States Supreme Court held that state statutes regulating obscene material must be limited to "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. 15, 24 (1973). The Court emphasized that adult pornography, which is protected speech, is unprotected if it is obscene: "This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment." *Id.* at 23; *see also State v. Marshall*, 859 S.W.2d 289, 294 (Tenn. 1993) (concluding that obscenity has no protection under the Tennessee Constitution). Because obscenity is unprotected speech, states may "regulate all the hard-core pornography [they] constitutionally [can]." *Smith v. United States*, 431 U.S. 291, 303 (1977); *see also Miller*, 413 U.S. at 25 ("We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts.").

Almost ten years later, in *New York v. Ferber*, 458 U.S. 747 (1982), the Court addressed whether *child* pornography, even that which is not obscene under the *Miller* definition, is protected by the First Amendment. The defendant in *Ferber*, a bookstore proprietor, was convicted of knowingly promoting a sexual performance by a child under the age of sixteen by distributing material depicting such a performance. *Ferber*, 458 U.S. at 751–52. The defendant argued that the New York statute under which he was convicted was unconstitutional because it did not require the prohibited material to be obscene in order to constitute an offense. The Court of Appeals of New York agreed; it held the statute unconstitutional because, among other things, it permitted conviction for promoting material "traditionally entitled to constitutional protection from government interference under the First Amendment." *Id.* at 752 (quoting *People v. Ferber*, 422 N.E.2d 523, 525 (N.Y. 1981)).

On appeal, the Supreme Court reversed. The *Ferber* Court deemed the *Miller* definition of obscenity inadequate to address child pornography because it "does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children." *Id.* at 761. The Court held for the first time

that child pornography is "a category of material the production and distribution of which is not entitled to First Amendment protection." *Id.* at 765. Consequently, it held, "the States are entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756. The Court based its decision in part on the states' compelling interest in safeguarding the physical and psychological well-being of children: "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757. The Court observed that the distribution of materials depicting sexual activity by children is "intrinsically related to the sexual abuse of children." *Id.* at 759. States can help combat the sexual exploitation of children that is inherent in the making of child pornography, the Court said, by prohibiting the illegal sale and distribution of such materials. It found that classifying child pornography as unprotected by the First Amendment was consistent with Supreme Court precedent. *Id.* at 763-64.

The *Ferber* Court cautioned, however, that there are "limits on the category of child pornography." *Id.* at 764. The Court explained, "As with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed." *Id.* It noted that "[t]he category of 'sexual conduct' proscribed must also be suitably limited and described." *Id.* States, the Court said, must limit the offense to works that visually depict sexual conduct by children below a specified age, and must include scienter on the part of the defendant as an element of the offense. *Id.* at 764-65. Contrasting the *Miller* definition of obscenity, the *Ferber* Court said that, for child pornography, "[a] trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Id.* at 764.

Against this backdrop, we consider cases that discuss sexual activity defined as "lascivious exhibition" of private body areas in the context of child pornography statutes.

**B. Lascivious Exhibition and *Dost***

As noted above, Tennessee Code Annotated section 39-17-1005(a)(1) makes it unlawful to produce child pornography, i.e., "material that includes [a] minor engaging in . . . [s]exual activity." In pertinent part, "sexual activity" is defined as "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(G). The term "lascivious exhibition" is

- 18 -

not defined in the statute, so we consider its meaning and how to determine whether given materials depict a "lascivious exhibition."[16]

Our Court of Criminal Appeals has pointed out that "Black's Law Dictionary defines lascivious as 'tending to excite lust; lewd; indecent; obscene.'" *Whitlock*, 2011 WL 2184966, at *3 (quoting Black's Law Dictionary 897 (8th ed. 2004)). "Lewd" and lascivious" are synonyms; both have a sexual connotation.[17] *See United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002); *Wiegand*, 812 F.2d at 1244; *Schmitt v. State*, 590 So. 2d 404, 410 (Fla. 1991); *State v. Kipf*, 450 N.W.2d 397, 404 (Neb. 1990).

While defining the term "lascivious" in the abstract is fairly straightforward, determining whether certain material depicts a minor engaging in the lascivious exhibition of their private body areas within the meaning of the sexual exploitation statutes is another matter. It is "an intensely fact-bound question." *Schuster*, 706 F.3d at 806; *see Dost*, 636 F. Supp. at 832 (noting that lasciviousness must be determined on a case-by-case basis).

Important to this case, it is generally accepted that mere nudity, without more, is insufficient to establish a lascivious exhibition of private body areas. *See United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009); *Kemmerling*, 285 F.3d at 645-46; *United States v. Grimes*, 244 F.3d 375, 381-82 (5th Cir. 2001); *Horn*, 187 F.3d at 789; *Amirault*, 173 F.3d at 33; *Knox*, 32 F.3d at 750; *United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990). The reasoning often proffered is that, if "lascivious" qualifies the term "exhibition" in the child sexual exploitation statute, mere nudity cannot be enough because such an interpretation would render the term "lascivious" superfluous. *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989); *see also Grimes*, 244 F.3d at

---

[16] *See United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008) ("The term 'lascivious' is not self-defining."); *United States v. Villard*, 885 F.2d 117, 121 (3d Cir. 1989) ("Whatever the exact parameters of 'lascivious exhibition,' we find it less readily discern[i]ble than the other, more concrete types of sexually explicit conduct listed in [the federal sexual exploitation statute].").

[17] While "lewd" and "lascivious" are considered synonymous, the term "lewd" is more antiquated than "lascivious." Years ago, "lewdness" itself was a common-law crime in Tennessee, defined as "any gross indecency which is sufficiently open and notorious as to tend to corrupt the morals of the community." *Abbott v. State*, 43 S.W.2d 211, 212 (Tenn. 1931) (quoting 36 Corpus Juris, 1035 and affirming conviction when the defendant placed a wrapped gift "suggestive of sexual intercourse, upon a Christmas tree, addressed to a young woman").

381-82 (noting that to find mere nudity sufficient for child pornography would "outlaw many works of art or family photos of, say, naked children in bathtubs"); *Horn*, 187 F.3d at 789 ("Nudity alone does not fit this description; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'"); *Knox*, 32 F.3d at 750 ("Nudity must be coupled with other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the statute.").

Moreover, criminalizing conduct that involves a depiction of "mere nudity" may have constitutional implications. *See Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("We have stated that depictions of nudity, without more, constitute protected expression."); *Ferber*, 458 U.S. at 773 (hypothesizing that protected depictions of child nudity could be found in materials "ranging from medical textbooks to pictorials in the National Geographic"); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) ("Clearly all nudity cannot be deemed obscene even as to minors."); *United States v. Scott Johnson*, 639 F.3d 433, 439 (8th Cir. 2011) (describing "mere nudity" as "innocent family photos, clinical depictions, or works of art"). Therefore, when the subject materials depict a child in the nude, the task for a trier of fact is to determine whether the depiction is of "mere nudity" or whether it is of "sexual activity," i.e., a "lascivious exhibition."

To assist in determining whether the videos in this case constitute material that includes a minor engaged in a lascivious exhibition, the Court of Criminal Appeals below referred to the six factors enumerated in *Dost*. Many other courts addressing sexual exploitation of children have discussed the so-called "*Dost* factors" and have come to differing conclusions about whether the factors should be considered and, if so, the extent to which they should be considered. Accordingly, a review of *Dost* is in order.

In *Dost*, the two adult male defendants took several photographs of a fourteen-year-old girl and one photograph of a ten-year-old girl in the nude; the children posed in various ways as directed by the defendants. Many of the photographs of the fourteen-year-old depicted her in "various supine and sitting poses," while the single photograph of the ten-year-old showed her sitting nude on the beach. *Dost*, 636 F. Supp. at 830. The defendants were charged with using minors to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct in violation of 18 U.S.C. section 2251 and with the knowing receipt or distribution of visual depictions of minors engaging

- 20 -

in sexually explicit conduct in violation of 18 U.S.C. section 2252.[18] *Id.* at 829-30. At issue was whether the photos depicted the minors engaging in "sexually explicit conduct" within the meaning of the federal child pornography statute, which defines the phrase as the "lascivious exhibition of the genitals or pubic area of any person." *Id.* at 830 (quoting 18 U.S.C. § 2255(2)(E), now codified at § 2256(2)(A)(v)).

The *Dost* court stated, "[T]he 'lascivious exhibition' determination must be made on a case-by-case basis using general principles as guides for analysis." *Id.* at 832. The court then offered "general principles" in the form of enumerated factors to be weighed:

> [T]his Court feels that, in determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under § 2255(2)(E) [now § 2256(2)(A)(v)], the trier of fact should look to the following factors, among any others that may be relevant in the particular case:
>
> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

---

[18] The co-defendants were also charged with conspiracy to commit those crimes. *Dost*, 636 F. Supp. at 830.

*Id.* The *Dost* court added that "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.'" *Id.* Rather, the ultimate determination of whether the material depicts "lascivious exhibition" must "be made based on the overall content of the visual depiction, taking into account the age of the minor." *Id.* The *Dost* court then used these "general principles" to assess the lasciviousness of the photographs at issue. *Id*. at 832. It concluded that all of the photographs depicted a minor engaged in the lascivious exhibition of her genitals or pubic area.[19] *Id.*

On appeal, the Ninth Circuit Court of Appeals noted without particular comment the factors set forth by the district court. *Weigand*, 812 F.2d at 1244. The appellate court took issue only with the fifth factor—whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity. It expressed concern that the fifth factor erroneously implied that the photographs "would not be lascivious unless they showed sexual activity or willingness to engage in it." *Id*. The appellate court said that the focus should not be on the child's conduct but on the actions of the defendant; it explained that "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles."[20] *Id*. Because the trial court had factored the child's actions into its determination of lasciviousness, the appellate court characterized the *Dost* district court's approach as "over-generous to the defendant." *Id*. With these comments, the

---

[19] In making its decision, the *Dost* court described the details of the photos at issue. It noted that the photos of the fourteen-year-old victim showed her "totally nude posed in a variety of positions" with her legs "open and her arms . . . raised behind her head." *Dost*, 636 F. Supp. at 833. It further commented that "her pubic area is in the foreground so as to be the prominent focal point of the photograph." *Id.* The ten-year-old victim was also described as nude, "leaning back, supporting her weight on her arms, hands resting on the sand . . . . Her pelvic area appears to be slightly raised or hyperextended, and her legs are spread apart. Her right leg is fully extended at a slight outward angle . . . . Her pubic area is completely exposed, not obscured by any shadow or body part." *Id.* Given these facts and other details in the photographs, the court concluded that "each and every one of these photographs depicts a 'lascivious exhibition of the genitals or pubic area' under 18 U.S.C. § 2255(2)(E)." *Id.*

[20] On one hand, the appellate court said, "Private fantasies are not within the statute's ambit." *Weigand*, 812 F.2d at 1245. On the other hand, in affirming the district court, the appellate court found that the photographs depicted "a lascivious exhibition because the photographer arrayed [the exhibition] to suit his peculiar lust." *Id*. at 1244.

appellate court affirmed the district court's finding of "lascivious exhibition" as it related to the photographs at issue. *Id.*

Since *Dost* was decided, most federal courts have utilized the *Dost* factors to some extent in deciding whether a visual depiction of a minor constitutes lascivious exhibition under the sexual exploitation statutes. *See United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008) (describing *Dost* as "[t]he leading case" on lascivious exhibition); *United States v. Williams*, 444 F.3d 1286, 1299 n.62 (11th Cir. 2006) ("Virtually all lower courts that have addressed the meaning of 'lascivious exhibition' have embraced the widely followed '*Dost*' test."), *rev'd on other grounds*, 553 U.S. 285 (2008); *Villard*, 885 F.2d at 125. In jurisdictions in which the state child sexual exploitation statute is similar to the federal statute, some state courts, including some Tennessee appellate courts,[21] have applied the *Dost* factors as well.[22] *See, e.g.*, *Cummings v. State*, 110 S.W.3d 272, 278 n.1 (Ark. 2003); *State v. Roberts*, 796 So. 2d 779, 786-87 (La. Ct. App. 2001); *Commonwealth v. Sullivan*, 972 N.E.2d 476, 484 (Mass. App. Ct. 2012); *Hood v. State*, 17 So. 3d 548, 555 (Miss. 2009); *State v. Smith*, 873 N.W.2d 169, 193 (Neb. 2016); *State v. Lopez*, 27 A.3d 713, 716 (N.H. 2011); *State v. Dubois*, 746 N.W.2d 197, 208 (S.D. 2008); *Perkins v. State*, 394 S.W.3d 203, 208 (Tex. Ct. App. 2012); *State v. Bagnes*, 322 P.3d 719, 727-28 (Utah 2014). Typically, courts using the *Dost* factors add a proviso that the factors are simply guideposts or a "starting point." They also typically note that some of the enumerated *Dost* factors may not be relevant in a given case, while some factors *not* enumerated *are* relevant.[23] *See Scott Johnson*, 639 F.3d at 439-40; *Steen*, 634 F.3d at 827; *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *Overton*, 573 F.3d at 686; *see also United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989); *Villard*, 885 F.2d at 125.

---

[21] Prior to the case at bar, our Court of Criminal Appeals utilized the *Dost* factors in three sexual exploitation decisions. *See Whitlock*, 2011 WL 2184966, at *6; *State v. Mayes*, No. E2004-02344-CCA-R3-CD, 2005 WL 2416620, at *10 (Tenn. Crim. App. Oct. 3, 2005); *State v. Dixon*, No. 01C01-9802-CC-00085, 1998 WL 712344, at *2 (Tenn. Crim. App. Oct. 13, 1998).

[22] Unlike the federal child sexual exploitation statutes, some state statutes do not include the word "lascivious" or the phrase "lascivious exhibition" to describe the prohibited material. *See, e.g.*, Kan. Stat. Ann. § 21-5510(d)(1) (2012) (defining "sexually explicit conduct" as "exhibition in the nude"); N.C. Gen. Stat. § 14-190.13(6) (2014) (defining "sexually explicit nudity" as "[u]ncovered, or less than opaquely covered").

[23] The *Dost* court itself cautioned that the trier of fact should look to other factors "that may be relevant in the particular case." *Dost*, 636 F. Supp. at 832.

Courts that have approved application of the *Dost* factors, even with the typical disclaimers that they are useful but non-exclusive, have at times ended up engaged in an extended discussion of each *Dost* factor, even those that were not applicable, and have become bogged down in disputes over what a given *Dost* factor means and how to apply it. *See, e.g.*, *Rivera*, 546 F.3d at 250-53 (describing various disputes over application of the *Dost* factors); *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) (noting that *Dost* has "fostered myriad disputes" and giving examples); *see also Wallenfang*, 568 F.3d at 658-59 (methodically applying the six *Dost* factors, though not statutorily mandated); *People v. Sven*, 848 N.E.2d 228, 233-40 (Ill. App. Ct. 2006) (same). In *Bolles v. State*, the Texas appellate court acknowledged problems associated with the *Dost* factors but nevertheless felt it necessary to approve their use:

> The *Dost* factors are not without problems; courts applying them have often become mired in numerous disputes regarding the meaning of each factor and how to apply them. But even the courts that adopted the *Dost* factors reluctantly nevertheless employed them out of the need for "neutral references and considerations to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution."

*Bolles v. State*, No. 13-14-00649-CR, 2016 WL 3548797, at \*4 (Tex. Ct. App. June 23, 2016) (citations omitted) (quoting *Rivera*, 546 F.3d at 252).

The sixth *Dost* factor, whether the depiction is intended to elicit a sexual response in the viewer, has been the subject of significant controversy.[24] Indeed, courts are sharply split on how the sixth *Dost* factor should be applied. Some hold that the sixth factor should be applied "subjectively," that is, the court should determine whether the materials at issue were intended to elicit a sexual response in the defendant himself or a like-minded pedophile. *See, e.g.*, *Overton*, 573 F.3d at 688-89; *Helton*, 302 Fed. Appx. at 849; *Knox*, 32 F.3d at 747; *Wolf*, 890 F.2d at 245. Others apply the sixth *Dost* factor "objectively," looking at whether the subject materials were intended to elicit a sexual response in the average viewer. *See, e.g.*, *Wallenfang*, 568 F.3d at 658; *Doe v.*

---

[24] As noted above, the sixth *Dost* factor was the subject of the disagreement between the majority and the dissent in the Court of Criminal Appeals below. *See Whited*, 2015 WL 2097843, at \*7, \*16 (McMullen, J., dissenting). In *Whitlock*, our Court of Criminal Appeals pointed out the split of authority on the proper application of the sixth factor. *Whitlock*, 2011 WL 2184966, at \*5-6 (surveying cases).

*Chamberlin*, 299 F.3d 192, 196-97 (3d Cir. 2002); *Amirault*, 173 F.3d at 34; *Villard*, 885 F.2d at 125; *United States v. McCarty*, 672 F. Supp. 2d 1085, 1101 n.11 (D. Haw. 2009), *vacated on other grounds*, 648 F.3d 820 (9th Cir. 2011); *People v. Lamborn*, 708 N.E.2d 350, 355 (Ill. 1999); *Sullivan*, 972 N.E.2d at 486 n.11; *Bagnes*, 322 P.3d at 727. At least one court seems to use a variation of the two. *See United States v. Brown*, 579 F.3d 672, 683 (6th Cir. 2009) (adopting a "limited context" test to permit limited consideration of the "context" in which photographs were taken). The difficulty of sorting out this particular factor prompted one court to comment: "[S]ome courts struggling to apply the sixth factor set forth in *Dost* have virtually abandoned it." *Sven*, 848 N.E.2d at 235 (citing *Villard*, 885 F.2d at 125; *Amirault*, 173 F.3d at 35).

In light of these complications, some courts have steered away from using the *Dost* factors. The First Circuit Court of Appeals initially gave a qualified endorsement of the *Dost* factors as "guideposts," *see Amirault*, 173 F.3d at 33, but later added cautions that they are not comprehensive or applicable in every case. *Id.* at 31, *quoted in Frabizio*, 459 F.3d at 87. In *Frabizio*, the trial court had dutifully applied the *Dost* factors to determine whether the computer photos in the possession of the defendant involved a minor engaging in a lascivious exhibition. On appeal, the appellate court expressed disapproval of the trial court's analysis, commenting that the trial court had analyzed the question "almost exclusively in terms of the *Dost* factors, and, in our view, overemphasized those factors in a way which raised the risk of inappropriately limiting the statute." *Id.* at 87. It criticized the trial court for "appl[ying] the six *Dost* factors in a way that accorded to them the same status as the statutory definition itself." *Id.* The *Frabizio* court cautioned that reliance on the *Dost* factors had led some courts to digress from the primary task of applying the statutory language:

> [T]he *Dost* factors have fostered myriad disputes that have led courts far afield from the statutory language. One dispute is, for example, how many of the factors must be present in an image for it to qualify as "lascivious." *Compare, e.g.*, *United States v. Wolf*, 890 F.2d 241, 245 & n.6 (10th Cir. 1989) ("We do not hold that more than one *Dost* factor must be present . . . ."), *with United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("Although more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present."). Another dispute is about what the specific factors mean. *See, e.g.*, *Amirault*, 173 F.3d at 34 (cataloging disagreement about what the sixth *Dost* factor means). As one commentator observed, "the *Dost* test has produced a profoundly incoherent body of case law." A. Adler, *Inverting the First Amendment*, 149 U. Pa. L. Rev. 921, 953 (2001). There is every reason to avoid

importing unnecessary interpretive conundrums into a statute, especially where the statute employs terms that lay people are perfectly capable of understanding.

*Frabizio*, 459 F.3d at 88. Since *Frabizio*, the First Circuit has remained skeptical about *Dost*. It recently commented that "lascivious is a 'commonsensical' term and that there is no exclusive list of factors—such as the so-called *Dost* factors—that must be met for an image (or a film) to be 'lascivious.'" *United States v. Silva*, 794 F.3d 173, 181 (1st Cir. 2015) (citing *Frabizio*, 459 F.3d at 25); *see also United States v. Batchu*, 724 F.3d 1, 9 (1st Cir. 2013) ("We have been clear that the *Dost* factors are problematic.").

In a recent decision, the Seventh Circuit held that the lower court did not err in using the *Dost* factors in jury instructions, but it also advised lower courts not to rely on *Dost* in future cases: "We take this opportunity . . . to discourage the use of the *Dost* factors; they are unnecessary in light of the clear statutory definition of the term 'sexually explicit conduct.'" *United States v. Price*, 775 F.3d 828, 831 (7th Cir. 2014). The Eleventh Circuit has not rejected the *Dost* factors, but it recently said pointedly that the determination of lasciviousness "does not require a multi-factor analysis." *United States v. Grzybowicz*, 747 F.3d 1296, 1306 & n.8 (11th Cir. 2014) (finding that the subject photos were "blatantly lascivious" and adding that "[d]eciding whether the *Dost* factors should be part of the law of our circuit is unnecessary in this case"); *see also State v. Anderson*, No. 10-0787, 2011 WL 1376731, at *3 (Iowa Ct. App. Apr. 13, 2011) (declining to apply the *Dost* factors to evaluate the alleged child pornography because, "[i]n our view, we need look no further than the express language of [the Iowa statutes] as applied to the brochure to affirm the [trial] court's finding of guilt"); *Craft v. State*, 558 S.E.2d 18, 24-25 (Ga. Ct. App. 2001) (rejecting *Dost* because it "interprets California law and thus is not controlling authority").

Even where courts have used *Dost* to determine whether a given depiction is lascivious, dissenting opinions and separate concurring opinions have highlighted concerns about over-reliance on the *Dost* factors. *See, e.g.*, *Sullivan*, 972 N.E.2d at 495 (Milkey, J., dissenting) ("[W]hile *Dost* was a well-meaning effort to lend some objectivity to the elusive question where the boundary between mere nudity and lewdness lies, its many shortcomings have been well documented."); *Steen*, 634 F.3d at 829 (Higginbotham, J., concurring) ("The *Dost* factors are not definitionally equivalent to the statutory standard of 'lascivious exhibition of the genitals,' but many courts have treated them as such, even requiring that a certain number of factors be present for pornography convictions. As a result, these factors often create more confusion than clarity.").

The limited value of the *Dost* factors becomes apparent when the material at issue is not a photograph. A video, for example, can include properties that photographs do not have, such as action, change of lighting or setting, time lapse, voices and other sounds, and depictions of different persons or objects appearing at different times during the course of the video. These characteristics may affect the perception of the lasciviousness of the visual presentation, but they are not accounted for in the *Dost* factors. *See, e.g.*, *Whitlock*, 2011 WL 2184966, at *5 & n.6 (noting factual dispute about whether noises made by the defendant as he filmed children playing at a pool were "moaning and groaning noises" or an attempt to sing along with ambient music); *Mayes*, 2005 WL 2416620, at *10-11 (considering the fact that the defendant could be heard on the video recording encouraging the minors to hold up their shirts, hold poses for video shots, and give the defendant a kiss); *People v. Hobbs*, 152 Cal. App. 4th 1, 4 (2007) (noting audible comments of defendant while he was secretly videotaping girls between the ages of eight and eighteen as they changed in and out of swimsuits in a locker room).

We have no particular problem with the *Dost* court's own application of the enumerated factors to the photographs at issue in that case. Indeed, the enumerated factors in *Dost* are, for the most part, unremarkable; they identify characteristics relevant to whether an image of a child is seen as sexual, such as whether the child in a photograph is nude or whether the photograph focuses on the child's genitals. The problems seem to arise when *Dost* is accorded outsized importance. The *Dost* court's attempt to set forth "general principles" and identify important factors in making lascivious determinations was a laudable attempt to place structure on the sometimes amorphous legal analysis surrounding pornography, especially child pornography. *See, e.g.*, *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) ("I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description [of hard-core pornography]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it."). However well-intended *Dost* was, from our review of the caselaw, we agree that the *Dost* factors "often create more confusion than clarity." *Steen*, 634 F.3d at 829 (Higginbotham, J., concurring).

We have noted that courts applying *Dost* almost invariably include caveats to the effect that the *Dost* factors are not "comprehensive," are not "necessarily applicable in every situation," are merely a "starting point," *et cetera*.[25] Despite these recitations,

---

[25] Even the Ninth Circuit, the federal circuit that includes the *Dost* district court, includes such caveats. Almost twenty years after the *Dost* test was enounced, a California district court disavowed use

many seem inexorably drawn to using *Dost* as a lasciviousness definition or a test of sorts, with lengthy analysis and weighing of each "factor" and debate regarding different courts' interpretation of specific factors. This often ends up pulling them "far afield" from the task at hand, namely, applying the statutory language to the materials at issue. *Frabizio*, 459 F.3d at 88. As discussed above, the sixth *Dost* factor in particular has proven to be analytical quicksand.[26] For this reason, we reject the use of the *Dost* factors as a "test" or an analytical framework for determining whether certain materials constitute child pornography.

We agree with the First Circuit that phrases such as "sexual activity" and "lascivious exhibition" are "terms that lay people are perfectly capable of understanding" and that they can be identified by the trier of fact through commonsense observation of the particular features of the subject materials. *Id.* at 88. In a given case, observation of the subject materials may include taking note of some of the characteristics identified by the *Dost* court, such as whether the child in the visual image is nude or whether the depiction focuses on the child's genitalia or pubic area. Our rejection of the *Dost* factors as a "test" or an analytical framework does not preclude judges from using their good sense to consider these or any other features of a depiction that might tend to make it

_____

of the *Dost* factors because "[a] close look at the *Dost* factors persuades the court that the test is not particularly helpful." *United States v. Hill*, 322 F. Supp. 2d 1081, 1086 (C.D. Cal. 2004). On appeal, the Ninth Circuit reaffirmed that it found the *Dost* factors still relevant as "a starting point" and added that they are "neither exclusive nor conclusive." *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) ("*Dost* itself acknowledged that it did not see to offer 'a comprehensive definition of . . . lasciviousness . . . .'").

[26] For example, in this case, both parties seem to contend that the choice of standard for the sixth *Dost* factor—subjective or objective—would virtually predetermine the outcome of the case. From each party's description of the other party's position, this Court must either (1) view the depiction of the child subjectively from the perspective of the defendant or a like-minded pedophile, which would result in finding a violation of the child exploitation statutes 100% of the time no matter how innocuous the depiction, or (2) view the depiction of the child objectively from the perspective of the average, reasonable person, which would result in finding a violation of the statutes 0% of the time because no reasonable person would ever be aroused by a depiction of a child no matter how egregious. This is a false choice, and we reject it. As noted above, the First Circuit has warned that we should "avoid importing unnecessary interpretive conundrums into a statute . . . ." *Frabizio*, 459 F.3d at 88. The trier of fact, be it judge or jury, is perfectly capable of determining whether the depiction of the child is of a sexual character, without resort to either imagining what a pedophile might think or asking themselves whether they are titillated by it.

sexual or lascivious.  Indeed, as will be seen below, in assessing the lasciviousness of the videos at issue in this case, this Court considers ordinary characteristics, such as the minor victims' nudity and whether the children's private body areas are featured in the videos.  However, we must also consider other features of the subject videos not mentioned in *Dost*.

In sum, we conclude that the fact-intensive determination of whether particular materials contain sexual activity or a lascivious exhibition of private body areas is not facilitated by the adoption of a one-size-fits-all "multi-factor analysis" such as the *Dost* factors.  *See Grzybowicz*, 747 F.3d at 1306.  Lower courts should refrain from using the *Dost* factors as a test or an analytical framework in making such a determination.[27]

## C. Standard under Tennessee Statute

We now turn to the standard under Tennessee's statute on the offense of especially aggravated child sexual exploitation.  "Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope."  *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)).  "Our obligation is simply to enforce the written language."  *Id.* at 614 (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)); *see also Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) ("When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use.").

As noted at the outset of our analysis, the Tennessee Protection of Children Against Sexual Exploitation Act includes three sexual exploitation statutes, Tennessee Code Annotated sections 39-17-1003, -1004, and -1005, which define especially aggravated sexual exploitation of a minor (the production offense), aggravated sexual exploitation of a minor (the distribution offense), and sexual exploitation of a minor (the possession offense).  The parallel structure of these three statutes was noted by our Court

---

[27] For the same reasons, we also reject the State's suggestion that we adopt a "limited context" approach to the sixth *Dost* factor in making a determination regarding lasciviousness.  *See United States v. Brown*, 579 F.3d 672, 683-84 (6th Cir. 2009).

of Criminal Appeals a few years after enactment of the Tennessee Protection of Children Against Sexual Exploitation Act:

> Section 1005 [making production an offense], the violation of which appellant stands convicted, is one of several offenses set out in the "Tennessee Protection of Children Against Sexual Exploitation Act of 1990." The other offenses, sexual exploitation [possession] and aggravated sexual exploitation [distribution], all employ the use of the term "material." The term is explicitly defined in the definitions section of the Act. The distinction between the three offenses is the nature of the prohibited actions. Thus, one who possesses proscribed material is guilty of a class E felony. One who promotes, sells, or distributes proscribed material is guilty of a class B felony, as is one who promotes, employs, uses, assists, transports or permits a minor to participate in performing or producing proscribed material. Tenn. Code Ann. §§ 39-17-1003–1005 (1991 Repl.).

*VanArsdall v. State*, 919 S.W.2d 626, 632 (Tenn. Crim. App. 1995). Thus, the "distinction between the three offenses is the nature of the prohibited actions," but the "proscribed material" for all three offenses (i.e., child pornography), *id.*, is exactly the same: "material that includes a minor engag[ed or engaging] in . . . [s]exual activity," Tenn. Code Ann. §§ 39-17-1003(a)(1), -1004(a)(1)(A), -1005(a)(1), defined in section 39-17-1002(8)(G) as the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(G). There is nothing in the language of any of these statutes indicating that the content of the subject material would be judged by a different standard depending on whether the accused produced, distributed, or possessed it. To the contrary, the parallel structure of the three statutes leads us to conclude that the content of the allegedly prohibited material is judged by the same standard, regardless of whether the accused produced it, distributed it, or merely possessed it.

We next look at what that standard is. Both the State and the defendant make their arguments in the context of the sixth *Dost* factor, whether the material was intended or designed to elicit a sexual response. We have already rejected use of the *Dost* factors as a test for the reasons outlined above; this holding includes a rejection of the troublesome sixth *Dost* factor. We instead focus on the task at hand, namely, application of the language in Tennessee's statute on especially aggravated sexual exploitation of a minor.

The Tennessee statute on especially aggravated sexual exploitation makes it an offense to produce "material that includes [a] minor engaging in . . . [s]exual activity."

Tenn. Code Ann. § 39-17-1005(a)(1). Although the State argues that the trier of fact should consider the subjective intent of the defendant in determining whether the minor is engaged in a "lascivious exhibition," the language chosen by the General Assembly does not include any reference to the defendant's subjective purpose of sexual arousal or gratification. Neither does the statutory definition of sexual activity—lascivious exhibition of the minor's private body areas—include a reference to the defendant's subjective purpose of sexual arousal or gratification.

In contrast, other Tennessee criminal statutes, such as observation without consent and photography without consent (also called "unlawful observation" and "unlawful photography," respectively) expressly include the subjective intent of the accused as an element of the offense. The statute on unlawful observation makes it an offense to surreptitiously observe a person without their consent in a place where the person has a reasonable expectation of privacy "if the viewing . . . (1) [w]ould offend or embarrass an ordinary person if the person knew the person was being viewed; and (2) *[w]as for the purpose of sexual arousal or gratification of the defendant*." Tenn. Code Ann. § 39-13-607(a) (emphasis added). The similar statute on unlawful photography makes it an offense to surreptitiously photograph a person when that person has a reasonable expectation of privacy, "or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph . . . (1) [w]ould offend or embarrass an ordinary person if such person appeared in the photograph; and (2) *[w]as taken for the purpose of sexual arousal or gratification of the defendant*."[28] Tenn. Code Ann. § 39-13-605(a) (emphasis added). Thus, both offenses explicitly include as an element of the offense that the defendant engaged in the prohibited conduct "for the purpose of sexual arousal or gratification of the defendant." Tenn. Code Ann. §§ 39-13-607 (observation without consent), 39-13-605 (photography without consent).

Indeed, Tennessee's statute on photography without consent essentially dovetails with the child sexual exploitation statutes; unlawful photography provides a mirror image of sorts to the child sexual exploitation statutes.[29] The unlawful photography statute

_____

[28] As we have indicated, the defendant in the instant case initially was charged with this offense but the charge was dropped, apparently because the surreptitious photography of a minor is not unlawful if it is done with the parent's prior consent. Tenn. Code Ann. § 39-13-605(a).

[29] Unlike the child sexual exploitation statutes, the statutes on unlawful observation and unlawful photography are not limited to offenses against children. As noted above, however, both are deemed more serious offenses when committed against a child under thirteen years of age. In fact, both statutes

explicitly includes the subjective intent of the accused as an element of the offense, but the content of the photographic image is not specified.[30] *See* Tenn. Code Ann. § 39-13-605(a). In contrast, the child sexual exploitation statutes are quite specific about the content of the subject material, but they make no reference to the accused's subjective intent.[31] *See* Tenn Code Ann. §§ 39-17-1003–1005. The legislature was certainly mindful of the child sexual exploitation statutes when it enacted the statute on unlawful photography. *See Hicks v. State*, 945 S.W.2d 706, 707 (Tenn. 1997) ("In construing statutes, we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments.").

To further assist in interpreting Tennessee's child sexual exploitation statutes, we compare them to the statutory schemes in our sister states. In contrast to Tennessee, some states have enacted child sexual exploitation statutes that incorporate a defendant's subjective intent to obtain sexual arousal, stimulation, or gratification as an element of the crime. For example, California's sexual exploitation statutes do not use the term "lascivious" in the definition of "sexual conduct." Rather, California's statutes define "sexual conduct" to include any "[e]xhibition of the genitals or the pubic or rectal area of any person for the purpose of sexual stimulation of the viewer."[32] Cal. Penal Code §§

---

were amended effective July 1, 2014, to increase the punishment for the crimes from a Class A misdemeanor to a Class E felony when the victim is under thirteen years old at the time of the offense. *See* Tenn. Code Ann. § 39-13-607(d)(2) (Supp. 2016) (unlawful observation); Tenn. Code Ann. § 39-13-605(d)(2)(B) (Supp. 2016) (unlawful photography). Since the offenses in this case occurred prior to July 1, 2014, these amendments are not applicable.

[30] As noted above, for unlawful photography, the subject photograph need only be one that "[w]ould offend or embarrass an ordinary person if such person appeared in the photograph." Tenn. Code Ann. § 39-13-605(a).

[31] For the *mens rea* under the child sexual exploitation statutes, the defendant's possession, distribution, or production of the material need only be knowing. *See* Tenn. Code Ann. §§ 39-17-1003 to -1005.

[32] Like California, several other states' statutes define "sexual conduct," "sexual activity," or a similar phrase as any exhibition or nudity of a minor that is for the purpose of obtaining sexual arousal or gratification. *See, e.g.*, Colo. Rev. Stat. § 18-6-403(2)(d), (e) (2013); Del. Code Ann. tit. 11, § 1100(7)(i) (2010); Idaho Code Ann. § 18-1507(1)(d), (e) (2006); Ind. Code § 35-42-4-4(a)(4)(C) (2014 & Supp. 2016); Iowa Code Ann. § 728.1(7)(g) (2015); Me. Rev. Stat. tit. 17-A, § 281(4)(E) (2006); Mont. Code Ann. § 45-5-625(5)(b)(ii) (2009); Neb. Rev. Stat. § 28-1463.02(3), (5) (2009); N.J. Stat. Ann. § 2C:24-4(b)(1) (2015); N.M. Stat. Ann. § 30-6A-2(A) (2016); Okla. Stat. tit. 21, § 1024.1(A) (2015); 18 Pa.

311.3(b)(5), 311.4(d)(1); *see also People v. Campa*, No. H037135, 2012 WL 4127442, at *3 (Cal. Ct. App. Sept. 20, 2012) (holding that hidden-camera video of a sixteen-year-old girl undressing in the bathroom was sufficient for conviction for possession of child pornography). Taking a different tack, the Arizona legislature amended its sexual exploitation statute to criminalize the production or distribution of depictions "in which a minor is engaged in *exploitative exhibition or* other sexual conduct," defining "exploitative exhibition" as exhibition of private body areas "for the purpose of sexual stimulation of the viewer." Ariz. Rev. Stat. Ann. §§ 13-3551(5), 13-3553(A)(1)–(2) (2010) (emphasis added). Interestingly, the amendment was enacted shortly after an Arizona appellate court reversed a defendant's sexual exploitation convictions on similar facts; the court based its decision on its conclusion that the girls, who were secretly videoed while changing clothes and taking a shower, were not "engaged in sexual conduct." *State v. Gates*, 897 P.2d 1345, 1351 (Ariz. Ct. App. 1994); *see also State v. Forys*, No. 1 CA-CR 07-0849, 2008 WL 4814480, at *2 (Ariz. Ct. App. Oct. 23, 2008) (recognizing that *Gates* was decided before the statutory amendment prohibiting the production or distribution of material depicting the "exploitive exhibition" of minors).

Thus, other jurisdictions have included in their child sexual exploitation statutes explicit language making the defendant's subjective purpose of sexual gratification an element of the offense. Tennessee has not done so.

All of these factors—the lack of statutory language referring to the defendant's subjective intent of sexual gratification, the contrast with the language in other Tennessee statutes (photography and observation without consent), and the contrast with statutes in other states that have expressly made the defendant's subjective intent an element of the offense—all indicate a legislative intent not to include the defendant's subjective intent of sexual gratification as an element of the offense. In other words, Tennessee's legislature did not make the offense of production of child pornography "turn on whether the maker or viewer of an image was sexually aroused." *Cf. Steen*, 634 F.3d at 829-30 (Higginbotham, J., concurring). Accordingly, we hold that, under Tennessee Code Annotated sections 39-17-1005(a)(1) and 39-17-1002(8)(G), the offense of especially

---

Cons. Stat. § 6312(g) (2015); Utah Code Ann. § 76-5b-103(10)(f) (2008); Wash. Rev. Code § 9.68A.011(4)(f) (2010). Kansas defines "sexually explicit conduct" as simply "exhibition in the nude," without a scienter requirement. Kan. Stat. Ann. § 21-5510(d)(1) (2012); *see also* N.C. Gen. Stat. Ann. § 14-190.13(6) (2014) (defining "sexually explicit nudity" as "[u]ncovered, or less than opaquely covered," private body areas).

aggravated sexual exploitation of a minor does not include as an element of the offense the accused's intent or purpose of sexual arousal or gratification.

Consequently, our assessment of whether the material is prohibited by the child sexual exploitation statutes does not turn on the defendant's intent or purpose of sexual arousal or gratification. We consider the content of the material, irrespective of the defendant's subjective intent, to determine whether it includes a lascivious exhibition of the child's private body areas. In addition, as noted above, because Tennessee's child sexual exploitation statutes define the prohibited material in the same way regardless of whether the defendant is accused of production, distribution, or mere possession, we look at the depiction of the child to determine whether that material would be deemed prohibited if the accused merely possessed it and we knew nothing about the circumstances of its making.

## D. Sufficiency of the Evidence

We now consider the nine videos at issue in this appeal to determine whether they contain sufficient evidence of a depiction that includes a minor engaged in "sexual activity," defined as the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person." Tenn. Code Ann. §§ 39-17-1005(a)(1), -1002(8)(G). In this opinion, we make general observations about the videos collectively. However, we have considered each of the videos individually, and any court assessing whether given materials are prohibited by the child sexual exploitation statutes should consider each photograph or video individually to determine sufficiency of the evidence for each count of conviction.[33]

Of the nine videos, six were taken in a bathroom used exclusively by Daughter[34] and three were taken in Daughter's bedroom. For most of the videos, the defendant can be seen at the beginning setting up the hidden cell phone camera, stepping back to ensure that it was positioned the way he wanted, re-positioning it if needed, and then leaving

---

[33] The Court of Criminal Appeals included a detailed description of each video in its opinion. *See Whited*, 2015 WL 2097843, at *2-3.

[34] It appears that two of the bathroom videos were taken in a different bathroom than the one customarily used by Daughter because the shower curtains are different.

before Daughter entered the room. When the activity ceases and the victims exit, the defendant's hand can sometimes be seen snatching up the cell phone. From viewing the videos, it is apparent that neither Daughter nor Friend was aware that they were being recorded.[35]

For each of the bathroom videos, Daughter entered for the obvious purpose of taking a shower. The defendant hid the cell phone in a basket under the bathroom mirror, with the camera aimed slightly upward, apparently to capture onscreen as much of Daughter's body as possible as she entered and exited the shower. As noted above, the shower curtain is opaque, so Daughter could not be seen while showering. In these bathroom videos, Daughter is at times seen fully nude, from the back, from the front, and in profile. Her bare breasts, buttocks, and pubic area are intermittently visible as she turns on the shower, enters and exits the shower, and generally moves about doing grooming tasks such as drying her body, putting on lotion, and towel-drying her hair. Daughter plays music in some of the bathroom videos, and, in one, she is seen shimmying to beat of the music as she sings along while still undressed.

For the three bedroom videos, Daughter and Friend (or Daughter alone) entered the bedroom in their bikini swimsuits, apparently after swimming, and changed into dry clothes. For one of the bedroom videos, the defendant can be seen joking around with the two girls after they enter the bedroom; Daughter says, "Dad, will you get out?!" He left before they changed clothes. In the bedroom videos, the cell phone is hidden low, near or at the floor, with the camera aimed upward at the area beside Daughter's bed, again with the center of the camera view at approximately the center of the girls' bodies. During the clothes-changing process, the girls are shown with their back or side facing the hidden camera; breasts, bare buttocks, and pubic regions are intermittently visible.

Thus, all nine videos depict nudity of a minor or minors to varying degrees. As we have noted, however, mere nudity, without more, is generally considered insufficient for a finding of lascivious exhibition of private body areas.[36] *See Wallenfang*, 568 F.3d at

---

[35] The depictions in the videos corroborate the testimony of both Daughter and Friend that they were unaware they were being recorded.

[36] By the same token, a finding of lascivious exhibition is not precluded by an absence of nudity, so long as there is an exhibition of private body areas that is lascivious in nature. *See, e.g.*, *State v. Mayes*, No. E2004-02344-CCA-R3-CD, 2005 WL 2416620, at *10 (Tenn. Crim. App. Oct. 3, 2005); *see also Price*, 775 F.3d at 837; *Carroll*, 190 F.3d at 298 n.7; *Knox*, 32 F.3d at 746.

657; *Kemmerling*, 285 F.3d at 645-46; *Grimes*, 244 F.3d at 381; *Horn*, 187 F.3d at 789; *Amirault*, 173 F.3d at 33; *Knox*, 32 F.3d at 750; *Arvin*, 900 F.2d at 1391. This conclusion is compelled by the language in Tennessee's child sexual exploitation statutes. As outlined above, Tennessee's statute does not define "sexual activity" as the mere exhibition of a child's private body areas; rather, it is defined as the *lascivious* exhibition of the private body areas. Tenn. Code Ann. § 39-17-1002(8)(G); *see also Horn*, 187 F.3d at 789 ("Nudity alone does not fit this description; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'"); *Knox*, 32 F.3d at 750 ("Nudity must be coupled with other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the statute."). Therefore, our task is to determine whether the depictions in the videos recorded by the defendant are of "mere nudity" or whether they are sufficient for the trier of fact to find that they include a minor engaged in the "lascivious exhibition" of private body areas.

To aid us in this determination, we compare factually-similar cases to see how those courts assessed the subject materials. Unfortunately, we find no shortage of comparative cases involving hidden-camera video of a nude minor.

In some of the hidden-camera cases, video of a nude minor engaged in everyday behavior has been held to be lascivious and, thus, sufficient to support conviction. These courts have found that the surreptitious videos included a "lascivious exhibition" because of evidence that the defendant intended to elicit a sexual response in himself or others. *See, e.g.*, *United States v. Bevers*, 329 Fed. Appx. 518, 519 (5th Cir. 2009) (upholding conditional guilty plea because hidden-camera video of minor showering "was taped with the purpose of eliciting a sexual response from the viewer"); *Helton*, 302 Fed. Appx. at 844-45, 849 (upholding conviction when defendant secretly videotaped minors using the toilet and undressing for the shower because the defendant intended to elicit a sexual response in himself or like-minded individuals); *United States v. Theis*, No. 14-20072-01-JAR, 2015 WL 5671377, at *9, *11 (D. Kan. Sept. 25, 2015) (convicting the defendant of attempted production when hidden-camera video showed an eleven-year-old in a bathroom engaging in ordinary activities because, "[i]mportantly, . . . the visual depiction was intended or designed to elicit a sexual response in himself and like-minded individuals"); *United States v. Bettman*, No. 1:13-CR-363-AA-1, 2015 WL 4945829, at *3 (D. Ore. Aug. 14, 2015) (denying motion to dismiss charge of production when hidden-camera video showed the defendant's gymnastics students changing clothes, stating that the "[d]efendant's intent is shown by his methods"); *United States v. Clark*, Crim. A. No. 09-33 GMS, 2010 WL 3488138, at *6 (D. Del. Aug. 30, 2010) (upholding a guilty verdict for production or attempted production based on a hidden-camera video of

a fourteen-year-old girl in a bathroom, stating that lasciviousness must be measured from the intent of the photographer).

Some of the hidden-camera cases in which the video was deemed lewd or lascivious involved off-camera coaching by the defendant to lure the unsuspecting minor into engaging in everyday behaviors that would include nudity, such as trying on clothing, in the location where the camera was hidden. *See, e.g.*, *State v. Brabson*, 7 So. 3d 1119, 1124 (Fla. Dist. Ct. App. 2008) (noting that the defendant coach asked swim team members to "try on" swimsuits in his office where he had hidden a video camera); *Sven*, 848 N.E.2d at 230 (noting that the defendant instructed his teenage babysitter to get into the bathtub when bathing his infant, purportedly for safety reasons, and then hid a video camera in the bathroom). At least one involved behavior that was clearly sexual in nature. *See Diorec v. State*, 295 P.3d 409, 412 (Alaska Ct. App. 2013) (defendant hid camera in step-daughter's bedroom and then offered her lubricant and sex toys and encouraged her to masturbate).

In some of the hidden-camera cases involving nude minors engaged in "normal" activities, the videos were held to constitute a lascivious exhibition because the camera focused or "zoomed in" on the minor's private areas, especially the genitalia, sometimes to the point where the depiction of the child's genitalia occupied most of the screen.[37] *See, e.g.*, *Brabson*, 7 So. 3d at 1122-23 (noting that videos taken by the defendant coach showed that he adjusted the camera to capture blatant focus on genitalia, and "the lewdness requirement . . . may be satisfied by the intent of the [defendant]"); *Sven*, 848 N.E.2d at 233 (upholding conviction using an objective standard when the defendant produced a hidden-camera video of his teenage babysitter in bathtub with infant when "there are times that all that is seen on the videotapes are the minor's vagina or buttocks"). Similarly, other courts have found the material to include a "lascivious exhibition" based on the defendant's manipulation of otherwise "innocent" recordings. *See United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) (freeze-frames of minor's pubic area from surreptitious video) (holding that "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child

---

[37] As we have noted, "lascivious exhibition" under federal law does not include an exhibition of female breasts or buttocks; it includes only the exhibition of the "genitals or pubic area of any person." *See* 18 U.S.C. § 2256(2)(A)(v). Consequently, federal cases would be less likely to look at whether the camera focused on the breasts or buttocks of an underage victim.

acting innocently"); *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999) (holding that freeze-framing an image of the minor's pubic area created a lascivious product, emphasizing that "[t]he 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video"); *United States v. McCall*, 833 F.3d 560 (5th Cir. 2016) (upholding guilty plea of producing and attempting to produce child pornography where the defendant videotaped a minor and used the video to create still images that zoomed in on the minor's breasts and genitals).

In contrast, some courts dealing with hidden-camera videotapes of nude minors engaged in everyday conduct have held the videos to be insufficient to establish a "lascivious exhibition" of the minor's private body areas because the conduct is innocent. *See, e.g.*, *United States v. Romero*, 558 Fed. Appx. 501, 503 (5th Cir. 2014) (determining that photos of girl sleeping and playing was not the use of a minor engaging in lascivious exhibition for purposes of sentence enhancement); *Gates*, 897 P.2d at 1347 (reversing a conviction when the defendant surreptitiously recorded minor females "innocently changing their clothes in private"); *Lockwood v. State*, 588 So. 2d 57, 58 (Fla. Dist. Ct. App. 1991) (holding that hidden-camera videos of a sixteen-year-old "undressing, showering, toweling herself dry, and performing other acts of feminine hygiene" did not constitute "sexual performance" defined as "lewd exhibition" by a child because they show innocent, normal, everyday activities); *Fletcher v. State*, 787 So. 2d 232, 235 (Fla. Dist. Ct. App. 2001) (holding that the father's placement of hidden camera in his daughter's bedroom and bathroom did not support a finding of probable cause to search because no facts indicated that anything other than innocent conduct would be filmed).

Some courts have reasoned that mere voyeurism, when the minor is nude but not doing anything sexual, is insufficient to sustain a conviction for producing child pornography. *See Steen*, 634 F.3d at 828 (reversing conviction when the defendant surreptitiously recorded a sixteen-year-old girl who was fully nude as she readied herself to use a tanning bed because the video reflected mere voyeurism "upon an unaware subject pursuing activities unrelated to sex"); *United States v. Honori Johnson*, No. 2:10-CR-71-FtM-36DNF, 2011 WL 2446567, at *9 (M.D. Fla. June 15, 2011) (holding that hidden-camera bathroom video showing completely nude minor constituted mere voyeurism).

Other courts have felt that hidden-camera video of a nude minor engaged in everyday activities is "sexualized" or made lascivious by essentially placing the viewer in

the place of a voyeur.[38]  *See, e.g.*, *Sven*, 848 N.E.2d at 239-40; *State v. Myers*, 207 P.3d 1105, 1113 (N.M. 2009) (holding that images of children's genitals taken from a hidden camera as they used a toilet "had a voyeuristic and deviant quality" such that fact finder could have found that they were "lewd"); *Perkins v. State*, 394 S.W.3d 203, 209 (Tex. Ct. App. 2012) (noting that the videos were "created and preserved to appeal to deviant and voyeuristic interests").

Still other courts have contrasted hidden-camera depictions with those for which the defendant coached or posed the minor to appear on-camera in an unnatural, sexualized pose.  *See, e.g.*, *Steen*, 634 F.3d at 828 (citing *Overton*, 573 F.3d at 688–89; *Rivera*, 546 F.3d at 250) ("When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex."); *United States v. Wolf*, 890 F.2d 241, 246 (10th Cir. 1989) (upholding conviction when the defendant posed a five-year-old girl in unnatural positions while she was sleeping and took photos of her, noting that the lower half of the girl's body was nude, her legs were spread apart, and "[t]he primary focus of light in the photograph is the victim's genitals").

With these comparative cases in mind, we turn to the videos at issue in this case. As noted, all of the videos include depictions of Daughter and/or Friend in various stages of undress, showing their private body areas, including bare breasts, buttocks, and pubic areas.  Certainly the hidden camera was positioned to capture the girls' nude bodies in the center of the screen, but we cannot say that the camera focused or "zoomed in" on the private areas to the extent deemed significant in factually similar hidden-camera cases that did not consider the defendant's subjective intent.  *See, e.g.*, *Sven*, 848 N.E.2d at 233 (emphasizing that entire screen was at times focused on minor's vagina or buttocks); *Asa v. Commonwealth*, 441 S.E.2d 26, 29 (Va. Ct. App. 1994) (holding that photo of minor

---

[38] The *Sven* court stated:

> Essentially, the tape places the viewer in the role of voyeur. . . . In watching the tape, the viewer stands in relation to the victim as would a peeping tom. . . . Whether an image is candid or posed has been deemed relevant in determining whether an image is lewd. . . . However, where, as here, the viewer is placed in the point of view of a voyeur, that the images are candid contributes to their lewdness. . . . Voyeurism is sexually motivated conduct, and it is recognized as deviant behavior. . . . [B]y placing the viewer in the role of voyeur, the images become sexualized . . . in a way consistent with deviant behavior.

*Sven*, 848 N.E.2d at 239-40 (citations omitted).

"standing nude" did not focus on the minor's private body areas but that other photos were lascivious because they included "close-up photographs depicting the teenager's genitalia as the primary object depicted in the photograph"). Furthermore, nothing in the videos indicates that the victims were posed or coached; they are not in any unnatural or overtly sexual poses and appear unaware of the camera. In all of the videos, the victims are engaged in normal, everyday activities for the settings, such as showering and changing clothes. The defendant, at times, talks with the victims while he is secretly recording them. However, the conversations are innocuous, such as light banter with Daughter and Friend, encouraging Daughter to go ahead and take her shower, and so on. The recorded interactions with the victims are ordinary and do not enhance the sexuality of the video depictions of Daughter or Friend.

The State argues that the voyeuristic perspective of the videos "sexualizes" nude images of everyday activities that might otherwise be held "mere nudity." This argument bears discussion. In some cases, the fact that the video was recorded by means of a hidden camera may not be evident from the depiction itself, without considering extraneous evidence. That is not the case here. In each of the nine videos at issue, the defendant is seen onscreen in the beginning, carefully setting up the hidden camera, and then is seen exiting shortly before the unsuspecting victim appears onscreen and disrobes to shower or change clothes. Thus, while the videos primarily depict the young victims undressed in their everyday activities, they also depict a middle-age man secreting a camera to record those activities.

We agree with the State that the actions of persons other than the minor victim who appear in video or images can affect the perception of whether the exhibition of the minor's private body areas is "lascivious." *See United States v. Ward*, 686 F.3d 879, 883 (8th Cir. 2012) (upholding conviction based on hidden-camera video when the defendant appears in the video positioning the victim or directing her to orient herself for the camera). Here, the depiction of the defendant setting up the hidden camera portrays voyeurism and suggests a sexual connotation for the minor's engagement in everyday activities ordinarily done in the nude and in private. Imagining a continuum, ranging from innocuous video of a fully clothed child all the way to explicit, hard-core pornographic images of a minor victim, these onscreen images of the defendant move the perception somewhat further along the continuum in the direction of lasciviousness.

However, if the nude videos of the victim, coupled only with the depiction of the defendant hiding the camera, were deemed prohibited material under the child sexual exploitation statutes, it would be difficult to distinguish the offense of production of child pornography from the lesser offenses that essentially criminalize voyeurism, i.e.,

observation without consent and photography without consent. So while we consider the defendant's appearance in the videos to be relevant, it does not, in and of itself, turn the videos into depictions of a minor engaging in a lascivious exhibition.

By looking at comparative cases, we have considered aspects of these videos found significant by other courts in determining whether the depictions of the minor victims are lascivious. These include the level and nature of the nudity in the videos, the emphasis on the minor victims' private body areas, the fact that the victims were engaged in everyday activities ordinarily performed nude, the defendant's audible comments and interactions with the victims recorded on the videos, and the defendants' recorded actions depicting his voyeurism in setting up the camera.[39]

The question is close, but we must hold that the videos at issue do not rise to a level at which the trier of fact could reasonably find that they include "sexual activity," defined as the "lascivious exhibition" of the minor's private body areas. Tenn. Code Ann. §§ 39-17-1005(a)(1), -1002(8)(G). Rather, the minors in the videos are engaging in everyday activities that are appropriate for the settings and are not sexual or lascivious within the ordinary meaning of those terms. For this reason, we reverse and dismiss the defendant's nine convictions for especially aggravated sexual exploitation of a minor.[40] In light of our reversal of these convictions, the case must be remanded for

---

[39] As demonstrated in our analysis, the fact that we have advised courts against using the *Dost* factors as a test does not prohibit courts from considering any of the characteristics highlighted by *Dost* if they are relevant in a given case. For example, in this case, we considered the level of nudity in the videos and the lack of focus on the private body areas of Daughter and Friend. These aspects of the depictions may be considered along with countless other features not contemplated in *Dost*, as here we considered the everyday nature of the victims' activities in the videos, the defendant's audible comments in the videos, and the defendant's recorded actions depicting his voyeurism.

[40] Our holding does not mean that the defendant's conduct does not constitute a criminal offense. The defendant in this case was convicted of observation without consent under Tennessee Code Annotated section 39-13-607, which means that the jury found that the defendant viewed the victims without their consent "for the purpose of sexual arousal or gratification of the defendant." Tenn. Code Ann. § 39-13-607(a)(2). For this reason, the evidence would undoubtedly have supported a conviction for photography without consent under Tennessee Code Annotated section 39-13-605, which also requires a finding that the photography "was taken for the purpose of sexual arousal or gratification of the defendant." *Id.* § 39-13-605(a)(2). However, as noted above, the statute on photography without consent contains an exception for photography of a minor when it is done with the consent of the minor's parent, and the defendant here is the victim's father.

reconsideration of the defendant's sentence on the convictions that were not challenged on appeal.

We find it necessary to address an issue raised by the dissent in the Court of Criminal Appeals below. The dissent opined that, if the defendant's convictions for especially aggravated sexual exploitation were reversed, his convictions should nevertheless be reduced to attempt to commit that crime. *See Whited*, 2015 WL 2097843, at *13 (McMullen, J., dissenting) (citing *Vanderwal*, 533 Fed. Appx. at 500). "[W]here a conviction for an offense is reversed on appeal for insufficient evidence, double jeopardy protects the accused from retrial on *that* offense, but he may still be tried on lesser offenses if the evidence at the first trial was not insufficient, as a matter of law, to support a conviction of those lesser offenses." *State v. Maupin*, 859 S.W.2d 313, 317 (Tenn. 1993) (emphasis in original). Attempt is a lesser-included offense of the offense charged. Tenn. Code Ann. § 40-18-110(f)(3) (2012 & Supp. 2016). Our criminal code defines the inchoate offense of criminal attempt as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

The defendant in this case was convicted of producing child pornography; the jury was not instructed on the lesser-included offense of attempt on those counts. Our conclusion that the defendant did not produce material that is sufficient to support a conviction for the production of child pornography under the child sexual exploitation statutes "is not tantamount to a finding of insufficiency on" attempt. *Cf. Maupin*, 859

S.W.2d at 318. The facts in this case present a close question regarding whether the defendant intended to capture exactly what he recorded in the videos—minors engaged in everyday activities ordinarily done nude—or whether he intended to "cause a result that would constitute the offense" of production of child pornography by recording the minors engaged in a lascivious exhibition. Tenn. Code Ann. § 39-12-101(3). Considering the entirety of the record, "the evidence in the record is not so insufficient" so as to preclude a finding of attempted production of child pornography. *Cf. Maupin*, 859 S.W.2d at 318.

Although we have held the evidence insufficient to support the defendant's nine convictions for especially aggravated exploitation of a minor, double jeopardy does not preclude the State from retrying the defendant on the lesser-included offense of attempt, should it choose to do so. *Id.* at 318-19.

In sum, we hold that the evidence is insufficient to support the defendant's nine convictions for especially aggravated exploitation of a minor, and those convictions are hereby reversed and dismissed. We must remand the case for resentencing in light of our decision. On remand, the State may retry the defendant on the lesser-included offense of attempt, if it so chooses.

**E. Jury Instructions**

At trial, the defendant requested two additional jury instructions. He requested first that the jury be instructed on the *Dost* factors, including an instruction that the sixth *Dost* factor should be applied objectively rather than subjectively. Second, he requested a jury instruction stating: "Photography of an undressed minor by itself is not sufficient to sustain a conviction for this offense."

Because we have reversed and dismissed the defendant's convictions for especially aggravated sexual exploitation, the defendant's challenge to the trial court's refusal to give these two special jury instructions is pretermitted. Accordingly, we decline to address it.

## F. Cross-examination of Victims at Sentencing Hearing

The defendant argues that the trial court committed reversible error in refusing to allow him to cross-examine Wife, Daughter, and Friend at the sentencing hearing.[41] The Court of Criminal Appeals held that the defendant waived this argument because, although he argued that he did not timely receive the victim impact statements, he did not request a continuance or object when the statements were entered into evidence. *Whited*, 2015 WL 2097843, at *11. The intermediate appellate court held further that any error in this regard "was harmless because it did not affect the outcome of the case." *Id.* We agree with the Court of Criminal Appeals' analysis on this issue and reject the defendant's argument for the reasons stated by the Court of Criminal Appeals in its decision.

## CONCLUSION

We hold that, under the three child sexual exploitation statutes, Tennessee Code Annotated sections 39-17-1003, -1004, and -1005, the content of the allegedly prohibited material is judged by the same standard, regardless of whether the accused produced it, distributed it, or merely possessed it. We reject the use of the *Dost* factors as a "test" or analytical framework to determine whether material is prohibited under these statutes. Interpreting Tennessee Code Annotated sections 39-17-1005(a)(1) and 39-17-1002(8)(G), we hold that the offense of especially aggravated sexual exploitation, i.e., producing material that includes a minor engaging in "sexual activity" defined as the "[l]ascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person," does not include as an element the accused's subjective intent or purpose of sexual arousal or gratification. To determine the sufficiency of the evidence, the court must focus on the material at issue and ask whether it includes a depiction of the lascivious exhibition of a minor's private body areas. Assessing the videos in the instant case, we conclude that the videos do not include a minor engaging in a lascivious exhibition. For this reason, the defendant's convictions are reversed and dismissed, and

---

[41] We address this issue in light of the fact that the defendant will be resentenced on remand.

- 44 -

the case is remanded for resentencing. On remand, the State may retry the defendant on the lesser-included offense of attempt to commit especially aggravated sexual exploitation, if it so chooses. The defendant waived any objection to the trial court's refusal to give him the opportunity to cross-examine the witnesses at his sentencing hearing; even if the trial court erred in this regard, any such error was harmless. Thus, we reverse and dismiss the defendant's nine convictions for especially aggravated sexual exploitation of a minor, and we remand to the trial court for further proceedings.

_____
HOLLY KIRBY, JUSTICE